CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
3/16/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| KRYSTAL H., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:24-cv-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | By:   Hon. Thomas T. Cullen |
| SECURITY, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Krystal H. ("Krystal") filed suit in this court seeking to overturn the Commissioner of Social Security's ("Commissioner") final decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. Krystal suffers primarily from osteoarthritis in her knees, degenerative disc disease, rheumatoid arthritis, fibromyalgia, obesity, and migraines. After a hearing, an administrative law judge ("ALJ") concluded that, despite her limitations, Krystal could still perform a range of light work with additional limitations. Krystal challenges that conclusion, calling for reversal on two grounds. After a thorough review of the record, the court agrees that the ALJ failed to properly consider the cumulative limiting effect of Krystal's obesity, as directed by the applicable regulations, and thus, that the decision below must be reversed.

## I.   STANDARD OF REVIEW

The Social Security Act (the "Act") authorizes this court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The court's role, however, is limited; it may not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted). Instead, in reviewing the merits of the Commissioner's final decision, a court asks only whether the ALJ applied the correct legal standards and whether "substantial evidence" supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991)).

In this context, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation omitted). But "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his past relevant work (if any) based on his residual functional capacity ("RFC"); and, if not (5) whether he can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II.    RELEVANT PROCEDURAL HISTORY AND EVIDENCE

Krystal filed for SSI benefits on April 21, 2021. (*See* R. 76.) She originally claimed a disability onset date of November 1, 2009 (R. 200), although at the hearing before the ALJ she amended that date to December 31, 2020 (R. 47). Krystal claimed disability arising from myriad health issues, including: coronary artery disease; migraines; fibromyalgia; autoimmune disorder; pain in her back, knees, stomach, arms, and hands; primary bilateral cholangitis; insomnia; depression; morbid obesity; bipolar disorder; scoliosis; and carpal tunnel syndrome, among others. (*See* R. 226.) Her claims were denied initially on January 6, 2022 (R. 121–25) and upon reconsideration on May 24, 2022 (R. 129–31).

After her denial, Krystal requested a hearing before an ALJ. (*See* R. 153–55.) The ALJ held that hearing on August 10, 2023 (R. 40–67), and issued a written decision denying Krystal's claim on September 27, 2023 (R. 17–33). Although the ALJ found that Krystal

suffered from several severe impairments—specifically "Osteoarthritis in the bilateral knees; Degenerative disc disease; Obesity; Inflammatory arthritis (seronegative); Fibromyalgia; Bilateral carpal tunnel syndrome; and Migraine headaches"—he determined that Krystal could still perform work at the light level, with additional limitations. (*See generally id.*) Krystal appealed that decision, but the Appeals Council denied her request for review, making the ALJ's written decision the final word of the Commissioner as of September 10, 2024. (*See* R. 1.)

## A.    Legal Framework

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week, despite her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The ALJ makes the RFC finding between steps three and four of the five-step disability determination. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520(e)). "This RFC assessment is a holistic and fact-specific evaluation; the ALJ cannot conduct it properly without reaching detailed conclusions at step 2 concerning the type and [functional] severity of the claimant's impairments." *Id.*

The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work-related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). The RFC should reflect credibly

- 4 -

established "restrictions caused by medical impairments and their related symptoms"—including those that the ALJ found "non-severe"—that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1, *2.

Second, the ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explain how he or she weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he or she considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision built an "accurate and logical bridge from [that] evidence to his [or her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), *superseded by Rule on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023) (internal quotation omitted) (first brackets in original). *See also Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12; *Patterson*, 846 F.3d at 662–63.

## B.    Medical Evidence

As noted below, the court finds that the ALJ erred in his consideration of the cumulative effects of Krystal's obesity. Accordingly, it will dispense with a fulsome recitation of the medical records. As is relevant to the present issue, however, the court will summarize evidence related to Krystal's well-documented obesity.

Prior to her disability onset date, as far back as 2017, Krystal's obesity was well documented. For example, medical records[1] reveal a diagnosis of morbid obesity from March 22, 2017, and her records from that time repeatedly reference her obesity. (*See, e.g.*, R. 579, 594, 603, 996.) Moreover, from 2017–2018, her records are replete with complaints of pain. (*See* 602 (pain is 6–7 most days), 598 (constant knee pain although pain was 2 out of 10 and controlled by prescribed medication), 592–95 (back and knee pain that is 4–5 out of 10 most days), 996 ("chronic pain syndrome"), 575–76 (knee injections for pain), 558 (pain 7 out of 10), 997 (noting neck and low back pain and noting that axial pain is 9 out of 10 and that physical therapy has been ineffective at relieving her pain and medication has been only partially effective)).

In August of 2018, Krystal underwent a laparoscopic sleeve gastrectomy to address her obesity and, in the following months, she lost nearly 60 pounds. (R. 530–37; 539 (weight of 274 on August 9, 2018), 510 (weight of 219 on December 4, 2018).) But her complaints of pain persisted, and even with continued weight loss, she still qualified as obese. (*See, e.g.*, R. 1022 (noting back pain 9 out of 10), 753 (noting degenerative changes in her knees), 487 (neck pain ranges from 6–10 out of 10), 1043 (assessment includes "morbid obesity" in April 2019), 462 (degenerative disc disease and neck pain), 712–15 (same), 1049 (neck and back pain), 429 (pain in knees, neck, back, wrists, and hands at 7 out of 10), 1062 (morbid obesity noted and Krystal reported that oxycodone only works 2–3 hours at a time), 422 (morbid obesity, joint pain, and joint swelling noted), 353 (left knee pain rated as 8–9 out of 10)).

---

[1] Citations to medical records are in the chronological order of her medical appointments.

The records are remarkably similar from her disability onset date—December 31, 2020—forward, with the addition of fatigue to her symptoms and diagnoses; in 2021 (*see, e.g.*, R. 1198–99 (noting joint pain and swelling and diagnoses of rheumatoid arthritis, low back pain, fatigue, and bilateral knee pain), 1102–04 (rating pain 7 out of 10 and noting chronic pain syndrome and arthritis of the knee), 1106–08 (same), 1151 (diagnosis of obesity)), 2022 (*see, e.g.*, R. 1324–28 (noting polyarthritis, pain with limited range of motion in right knee, and diagnoses of insomnia, obesity, and fatigue), 1266 (noting obesity is stable), 1282–85 (pain 7 out of 10, noting neck and low back pain that is aggravated by activity; "[p]ain level unchanged"), 1318 (noting rheumatoid arthritis, insomnia, and fatigue), 1551-52 (diagnoses of fatigue and obesity), 1424 (hinged knee brace), 1446 ("increased right medial knee pain" but noting 40% reduction in pain with medication), 1411 ("[p]ain is at the medial knee and 'all over the knee'"), 1405 (continued knee pain; corticosteroid and gel injections "have not provided any long-term relief"), 1538–42 (reporting pain in both knees and back and diagnoses of insomnia, osteoarthritis of the *left* knee, and fatigue)), and 2023 (*see, e.g.*, R. 1461 (pain 7 out of 10 and noting "slightly swollen left knee" and assessed as "overweight"), 1529 ("[p]ain is aggravated at a 10/10 in neck and knees"), 1521 ("[p]ain is aggravated at a 10/10 in knees, shoulders, neck"), 1629 (diagnoses of insomnia and bilateral chronic knee pain)).

## C.    Opinion Evidence

On initial review of Krystal's SSI application, state-agency examiners Richard Milan, Jr., Ph.D., and Nicholas Tolou, M.D., found that Krystal suffered several severe impairments, including osteoarthritis and obesity, but opined that she had the RFC to perform the full range of "light" work. (R. 103–07.) Dr. Tolou found that Krystal was able to "[s]tand and/or walk

(with normal breaks)" and "[s]it (with normal breaks)" for "[a]bout 6 hours in an 8 hour workday" each and that she should occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (R. 105.) He also determined that Krystal could occasionally perform all of the listed postural limitations, such as climbing ramps/stairs, stooping, kneeling, crouching, and crawling. (*Id.*) Based on his determination of Krystal's RFC, Dr. Tolou opined that Krystal was not disabled under the terms of the Act. (R. 107.)

At the appellate review, state-agency examiners Stephen Saxby, Ph.D., and Jack Hutcheson, Jr., M.D., opined that Krystal suffered several severe impairments, including osteoarthritis, disorders of the skeletal spine, obesity, and fibromyalgia. (R. 114.) Dr. Hutcheson concurred with the prior findings regarding lifting and/or carrying and stand/sit durations, but found additional postural limitations. For example, he determined the Krystal could "frequently": climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds. (R. 116.) Like the initial reviewers, Dr. Hutcherson ultimately concluded that Krystal could perform the full range of "light" work and, therefore, was not disabled. (R. 117–18.)

## D.    Relevant Testimony

At the hearing before the ALJ, Krystal testified that she typically suffers from migraine headaches three times a week. (R. 49.) She takes daily medicine for those migraines, as well as Botox therapy. (*Id.*) She also has "emergency meds" that she alternates taking, because each can only be taken once every 48 hours. (R. 49–50.) Once the migraine subsides, however, she is nevertheless left with "the headache part of it," noting that the "migraine" aspect involves

"severe light sensitivity, can't make noise in the house, whispering causes pain." (R. 50.) When a migraine starts, it ordinarily lasts for "[a] day or so." (*Id.*)

As for other pain, the pain in her neck is "comes and goes" but causes other issues, like tingling and numbness in her hands. (R. 51–52.) Krystal also discussed her fibromyalgia and that, although she has been on "a lot of different meds, . . . nothing seems to work," and, in response to her attorney's question, she confirmed that the associated pain is "pretty much widespread all over [her] body." (R. 53.)

Krystal also discussed her rheumatoid arthritis, reporting that "the joints and stuff ache more" and she "ache[s] all over." (*Id.*) She also reported that her "joints swell really bad" "[s]o it makes it hard to get them to work," and that the joint pain is "[c]onstant." (*Id.*)

As for her knee pain, Krystal reported that "they're just awful all the time." (R. 54.) Although the pain in her right knee "comes and goes," the pain in her left is "constant." (*Id.*)

Krystal also suffers from irritable bowel syndrome ("IBS"), and she discussed how it can cause both diarrhea and constipation. (R. 54.) Before her gastric bypass surgery, her IBS cause diarrhea "for the longest time," but after the surgery, "it switched the other way." (*Id.*) The IBS also causes abdominal pain which usually precedes a bathroom emergency. (R. 55.)

Krystal's sleep pattern is also irregular on account of her pain and other ailments. Despite being on several sleep medicines, she rarely sleeps more than three or four hours a night. (R. 55.) As a result, she feels tired and fatigued every day and often has to lay down due to her fatigue. (R. 55–56.) On some days, she barely makes it an hour before "passing out" because she is so tired. (R. 56.) In fact, "most of the time," Krystal is either laying down in her

bed or on the couch. (R. 57.) She also has trouble finishing TV shows or movies in a reasonable amount of time because she often falls asleep while watching them. (R. 60–61.)

As it relates to her postural limitations, Krystal testified that she can only sit in one spot for "about 30 minutes" before she has to move because of her knees and back. (R. 57–58.) Her knees and back also make it difficult to stand for any length of time. (R. 58.) Krystal rarely does household chores, often relying on her children to perform them because she cannot on account of her "pain [and] tiredness." (R. 59.) When she is able to do anything around her house, the longest she can work before needing a break is 15 to 20 minutes. (*Id.*)

Charles Smolkin, a vocational expert ("VE"), also testified at Krystal's hearing. Krystal's last job was 15 years ago, so she did not have any relevant work history to evaluate in light of her limitations.[2] (*See* R. 62.) He opined that, given the hypotheticals and limitations posed by the ALJ, Krystal could perform various jobs at the light work level, such as a cashier, a marker, and a storage facility rental clerk, and at the sedentary level, such as a document preparer, surveillance system monitor, and a sack repairer. (R. 63–64.) The ALJ also asked whether any of the jobs the VE identified would permit 20% of time "off task" to account for a need to alternate positions; he said that "even 10% of the time [off task] would make that an unsatisfactory employee" and would "preclude" all the jobs he mentioned. (R. 65.)

## E.    The ALJ's Opinion

In the operative decision, the ALJ concluded that Krystal suffered from: "Osteoarthritis in the bilateral knees; Degenerative disc disease; Obesity; Inflammatory

---

[2] Krystal had previously been awarded SSI, but it was terminated in 2015 when, during a Continuing Disability Review, it was determined that Krystal was no longer disabled. *See Krystal H. v. Saul*, No. 4:19cv00005, 2020 WL 6047756, at *1 (W.D. Va. Oct. 13, 2020).

arthritis (seronegative); Fibromyalgia; Bilateral carpal tunnel syndrome; and Migraine headaches."[3] (R. 20.) He found that Krystal did not suffer from "an impairment or combination of impairments" that met or medically equaled one of the listed impairments in the applicable regulations. (R. 21.) "After careful consideration of the entire record," the ALJ found that Krystal had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except stand and walk for hours; frequently stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; no climbing ladders, ropes, and scaffolds; frequently handle and finger; can have occasional exposure to vibrations; can have no exposure to hazardous conditions, including unprotected heights and moving machinery; and can tolerate "moderate" noise intensity level . . . .

(R. 22–23.) After considering Krystal's age, education, and RFC,[4] the ALJ concluded that a significant number of jobs exist in the national economy that Krystal could perform, such as a cashier, storage facility rental clerk, and router.[5] (R. 32–33.) Therefore, the ALJ determined that Krystal was not under a disability from December 31, 2020, through the date of his decision. (R. 33.)

## III.   ANALYSIS

Krystal challenges the ALJ's opinion on two grounds. First, she contends that the ALJ "failed to consider the impact of [Krystal's] obesity upon her other impairments and [her] RFC." (Pl.'s Br. at 37 [ECF No. 14].) Second, Krystal contends that the ALJ's decision finding

---

[3] The ALJ also determined that Krystal's bilateral cholangitis, irritable bowel syndrome, alleged insomnia, and bipolar disorder were not severe impairments. (R. 20.)

[4] As noted by the VE, Krystal has "no past relevant work." (R. 32.)

[5] The ALJ also considered sedentary jobs that Krystal could perform, such as surveillance system monitor, sack repairer, and document preparer. (R. 33.)

her allegations inconsistent with the medical evidence "is not supported by substantial evidence and should be rejected as insufficient." (*Id.* at 45.) Because the court agrees with her first argument, remand is appropriate.[6]

"In making an RFC determination, an ALJ should consider the combined effect of all the claimant's medical impairments." *Kimberly W. v. Comm'r of Soc. Sec.*, No. 4:19-cv-00023, 2021 WL 827075, at *3 (W.D. Va. Mar. 3, 2021) (Report and Recommendation), *adopted by* 2021 WL 1232101 (W.D. Va. Mar. 31, 2021). "The regulations acknowledge that obesity may compound the effects of other impairments[.]" *Id.* Thus, although obesity is not a listed impairment, the functional limitations it causes, "either alone or in combination with another impairment(s), may medically equal a listing." *David B. v. Bisignano*, No. 3:24-cv-623, 2025 WL 2155789, at *5 (E.D. Va. July 29, 2025) (quoting SSR 19-2p, 2019 WL 2374244, at *2). Specifically,

> Social Security Ruling 19-2p recognizes that obesity can affect a person's exertional functions (such as sitting, standing, walking, lifting, carrying, pushing, and pulling), non-exertional functions (such as climbing, balancing, stooping, kneeling, crouching, and crawling), and environmental limitations (such as ability to tolerate extreme heat, humidity, or hazards). . . . In addition,

---

[6] In her brief, Krystal relies primarily on two cases: *Kimberly W. v. Commissioner of Social Security*, No. 4:19-cv-00023, 2021 WL 827075 (W.D. Va. Mar. 3, 2021), and *Bradberry v. Astrue*, No. 7:11-cv-00235, 2011 U.S. Dist. LEXIS 144312, at *11–12 (W.D. Va. Dec. 15, 2011). Although the court finds the analysis in *Kimberly W.* to be on point and persuasive, her reliance on *Bradberry* is misplaced. Krystal states that, in that case, the court "remanded the claimant's case for further consideration of the impact of the claimant's obesity on the claimant's residual functional capacity," and that the court "stated the ALJ's decision gave very little weight, if any, to the claimant's obesity in formulating the residual functional capacity and that the limitations are consistent with the claimant's other symptoms of severe joint and back pain and remanded the case for further consideration of the impact of plaintiff's obesity." (Pl.'s Br. at 40.) But that is not the point to be gleaned from *Bradberry*. In its ruling, the court noted that its decision "does not indicate that the ALJ entirely failed to consider Bradberry's obesity; rather the ALJ erred in evaluating how Plaintiff's obesity affected her RFC." *Bradberry*, 2011 U.S. Dist. LEXIS 144312, at *11–12. The error was that the ALJ improperly concluded that the plaintiff's failure to heed medical advice to lose weight and alter her diet indicated that her obesity was not as limiting as she claimed, which directly contravened the applicable regulations, specifically SSR 02-1p (the precursor to SSR 19-2p). *Id.* at *13. It was not, as Krystal argues now, on point with the error she claims in her case: to wit, a failure to consider how her obesity affects her RFC in conjunction with her other impairments. *See* SSR 19-2p, 2019 WL 2374244, at *4.

- 12 -

> obesity may affect a person's ability to manipulate objects as well
> as a person's range of motion in the skeletal spine and extremities
> due to increased stress on weight-bearing joints.

*Id.* (cleaned up) (citing SSR 19-2p, 2019 WL 2374244, at *2). Therefore, an ALJ "must consider 'the limiting effects of obesity' in determining the RFC, and must explain the conclusion whether obesity causes any limitations." *Daisy F. v. Kijakazi*, No. 2:21-cv-563, 2022 WL 18936086, at *7 (E.D. Va. Dec. 15, 2022) (quoting SSR 19-2p, 2019 WL 2374244, at *4). Courts in this Circuit have found that, when an ALJ completely fails to mention obesity and when an ALJ "generally mention[s] obesity without including analysis or discussing the relationship between obesity and other physical impairments and functional abilities," remand is appropriate. *David B.*, 2025 WL 2155789, at *5 (citing *Daisy F.*, 2022 WL 18936086, at *7 and *Kimberly W.*, 2021 WL 827075, at *5). In contrast, courts have affirmed in cases where the ALJ "did not articulate a detailed discussion but showed that he or she considered the applicable law and cumulative effects of the claimant's obesity." *Id.* (citing *Kevin F. v. O'Malley*, No. 5:23-cv-305, 2024 WL 604747, at *8 (S.D.W. Va. Jan. 26, 2024)). "Importantly, an ALJ's analysis of obesity does not need to be incredibly extensive, but there must be more than an 'utter lack of analysis' of the plaintiff's obesity." *Daisy F.*, 2022 WL 18936086, at *8 (quoting *Katherine T. v. Kijakazi*, No. 6:21-cv-7, 2022 WL 4477703, at *8–9 (W.D. Va. Sep. 26, 2022)).

This case falls into the former category, in that the ALJ's mention of Krystal's obesity, let alone consideration of it, is simply insufficient. In fact, the word "obesity" appears only three times in the ALJ's written decision: once where the ALJ found it was a severe impairment (R. at 20), once in a summary of Krystal's claimed impairments (R. at 23), and once in a reference to her medical records and a notation that "her fibromyalgia and obesity were each

- 13 -

assessed as stable," (R. at 27). Even if the court were to read the ALJ's decision more generously and attempt to divine reference to Krystal's obesity by implication, the ALJ only referenced Krystal's record body mass index ("BMI") twice. (R. at 26, 30.) But among these scant references, the ALJ offered no analysis, let alone the consideration and analysis required by SSR 19-2p.[7]

Krystal is correct that this case is akin to *Kimberly W. v. Commissioner*. In that case, the plaintiff was found to suffer from: fibromyalgia; spine, bilateral hip, and left knee disorders; polyarthralgia; and obesity. 2021 WL 827075, at *4. But the ALJ failed to consider "the relationship between Kimberly's 'extreme' obesity and her back, hips, and knee impairments and their effect on her functional abilities." *Id.* at *5. The same is true here. Whether the ALJ actually considered how Krystal's obesity affected her knees and back, his opinion does not explain that. And without that necessary explanation—or even a cursory one—the court cannot find that the ALJ applied the proper legal standard.[8]

Krystal is correct to point out that, even if the ALJ failed to heed the dictates of SSR 19-2p, the onus is still on her to advance additional obesity-related functional limitations not accounted for by the RFC. *See, e.g.*, *Matthews v. Astrue*, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009). Here, Krystal highlights the additional limiting effects of her obesity as well as the attendant fatigue, both of which may require additional limitations, such as more "off-task" time about which Krystal questioned the VE at her hearing. (*See* R. 65–66.) Considering

---

[7] Although not required, the court notes that the ALJ failed to cite or reference SSR 19-2p either.

[8] It might very well be that Krystal's obesity imposed no greater limitation on her than the ALJ noted, but the ALJ must explain that. This court is neither empowered nor inclined to make that determination in the first instance.

the ALJ's "near total failure to examine the effects of [Krystal's] obesity" and the failure to "discuss the relationship between [her] . . . obesity and her back . . . and knee impairments," *Kimberly W.*, 2021 WL 827075, at \*5, the court believes the onset of fatigue after her disability onset date and the potential need for additional functional limitations to account for that satisfies her obligation.

Of course, it is true that "[t]he ALJ's conclusion that obesity is a severe impairment does not by itself necessitate additional limitations," and "[a]n ALJ is not required to include a detailed analysis regarding a claimant's obesity." *Id.* at \*5 (citing SSR 19-2p; *Richards v. Astrue*, No. 6:11cv17, 2012 WL 5465499, at \*6 (W.D. Va. July 5, 2012)). "But the ALJ must consider a claimant's obesity in steps two through five of the five[-]step inquiry." *Id.* "[A] total failure to examine obesity in a disability hearing constitutes reversible error." *Richards*, 2012 WL 5464499, at \*8 (citing *Davis v. Astrue*, No. 7:09CV00200, 2010 WL 424144, at \*5–6 (W.D. Va. Feb. 3, 2010)). Here, the ALJ totally failed to consider (or explain his consideration of) Krystal's obesity, and remand is required.

## IV.    CONCLUSION

For the foregoing reasons, the final decision of the Commissioner will be reversed, and this case will be remanded to the Commissioner for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 16th day of March, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE